**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-61915-RAR**

**ACUTE, INC.,**

     Appellant,

v.

**ECI PHARMACEUTICALS, LLC,**

     Appellee.

_____/

**ORDER DISMISSING BANKRUPTCY APPEALS**

**THIS CAUSE** comes before the Court on Appellee's first Motion to Dismiss Appellant's Pending Appeal ("First MTD"), [ECF No. 5], Motion for Leave to Amend Sale Order, [ECF No. 6], and Appellee's second Motion to Dismiss Pending Appeal ("Second MTD"), [ECF No. 25]. Appellee ECI Pharmaceuticals, LLC ("ECI") seeks to dismiss two appeals by Appellant Acute, Inc. ("Acute") from a bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Florida, *In re ECI Pharmaceuticals LLC*, Case No. 24-14430-SMG (Bankr. S.D. Fla. 2024) ("*In re ECI*"). The Court having considered the Motions, applicable law, and the record in its entirety, it is hereby

**ORDERED AND ADJUDGED** that Appellee's First MTD, [ECF No. 5], is **GRANTED**, Appellee's Motion for Leave to Amend Sale Order is **DENIED AS MOOT**, [ECF No. 6], and Appellee's Second MTD, [ECF No. 25], is **GRANTED**.

**BACKGROUND**

### I.    *The Bankruptcy*

On May 3, 2024, ECI and its affiliate BioRamo, LLC ("BioRamo") (collectively, "Debtors") each filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the

Southern District of Florida ("Bankruptcy Court"). *In re ECI* (Bankr. S.D. Fla. May 3, 2024), ECF No. 1; *In re BioRamo LLC*, Case No. 24-14431-SMG (Bankr. S.D. Fla. May 3, 2024), ECF No. 1. The bankruptcy cases are being jointly administered under Case No. 24-14430-SMG ("Bankruptcy Case"). *See In re ECI* (Bankr. S.D. Fla. May 7, 2024), ECF No. 15.[1]

## II.   First Appeal

### A.   Sale Order

On August 16, 2024, Debtors filed an *Expedited Motion to Authorize and Approve (I) Proposed Private Sale of Substantially All of Debtors' Assets, and (II) Other Related Relief* ("Sale Motion"). *In re ECI* (Bankr. S.D. Fla. Aug. 16, 2024), ECF No. 172. The Sale Motion sought the Bankruptcy Court's approval of an undated Asset Purchase Agreement ("APA"), *see id.* at 19–30, by which Debtors would sell substantially all their assets to Acute in a private sale pursuant to 11 U.S.C. § 363(b)(1), *see id.* ¶ 20. With no objections to the Sale Motion, the Bankruptcy Court entered an Order on August 30, 2024, authorizing Debtors to sell substantially all their assets to Acute pursuant to the terms set out in the APA ("Sale Order"). *See generally In re ECI* (Bankr. S.D. Fla. Aug. 30, 2024), ECF No. 193. Per the Sale Order, Debtors and Acute were "free to close under the APA at any time, subject to the express terms of the APA." *Id.* ¶ 5.

### B.   Order Denying Reconsideration

At some point after the Bankruptcy Court entered the Sale Order, a dispute arose between Debtors and Acute regarding the parties' closing obligations under the APA. On September 13, 2024, Acute filed a Motion for Reconsideration of the Sale Order ("Motion for Reconsideration") pursuant to Bankruptcy Rules 9023 and 9024. *See In re ECI* (Bankr. S.D. Fla. Sept. 13, 2024), ECF No. 199. According to Acute, separate from the APA, Acute entered into a contract with a

---

[1] Although ECI and Bioramo's bankruptcy cases are being jointly administered, Acute names ECI as the sole Appellee in both of the appeals before the Court.

company called South Florida Business Plaza ("SFBP") to purchase the building and real estate where the Debtors operated their businesses ("Real Estate Contract"). Mot. for Recons. ¶ 4. Closing under the Real Estate Contract was to take place simultaneously with closing under the APA. *See id.* ¶ 26. However, Acute claimed that SFBP, "with the consent and knowledge of the Debtors, embarked on an aggressive course of conduct against Acute, with the ultimate goal of causing the failure of the sale of the real estate to Acute, which in turn would cause the failure of Acute to [ ] purchase the Debtors' assets" under the APA. *Id.* ¶ 4.

First, in late August 2024, after Acute deposited escrow payments required under the APA and the Real Estate Contract into a trust account maintained by Acute's counsel, counsel for Debtors and counsel for SFBP "began questioning and harassing" Acute's counsel, "alleging that Acute was in breach of the APA and Real Estate Contract because [Acute's counsel, acting as] escrow agent was not in possession of the deposit in 'cleared funds[.]'" *Id.* ¶ 21. After some jostling between Acute, Debtors, and SFBP, Acute advised Debtors and SFBP that neither the Real Estate Contract nor the APA required the escrow deposits to be made in cleared funds, *id.* ¶¶ 21–22, and subsequently, "this form of harassment ceased," *id.* ¶ 23.

Next, SFBP "decided to unilaterally impose a closing date on the Real Estate Contract for September 10, 2024." *See id.* ¶ 24. In Acute's view, this closing demand was "in violation of the contractual obligations of the parties and in violation of the [Sale Order]." *Id.* ¶ 26. When Acute did not appear at the closing on September 10, 2024, SFBP declared that Acute was in default under the Real Estate Contract. *See id.* ¶ 26. Acute maintained that it was not required to close under either the Real Estate Contract or the APA because "[a]fter the entry execution of the APA and the Real Estate Contract," Acute learned that Debtors were "not in the position to provide for an orderly transfer, assignment or use of" certain governmental licenses that were necessary for

Acute to operate the business, the transfer of which was a condition precedent to closing under the APA. *Id.* ¶ 4.

Therefore, Acute posited that the Bankruptcy Court needed to vacate and amend the Sale Order in order to clarify "when the closing on the APA and the Real Estate Contract needs to occur, in order to give the Debtors and Acute the time needed for the appropriate governmental agencies to allow Acute the ability to operate the businesses with the appropriate Licenses intact." *Id.* Specifically, Acute requested that the "[Bankruptcy] Court modify the [Sale Order] to allow sufficient time for appropriate procedures to be put in place to allow for the use, transfer and/or assignment of the Licenses so that Acute will be able to operate the businesses upon closing." *Id.* ¶ 28.

On September 25, 2025, the Bankruptcy Court held a hearing on the Motion for Reconsideration ("Sale Hearing"). *See* Sale Hearing Transcript, [ECF No. 13]. At the Sale Hearing, the Bankruptcy Court explained that it would deny the Motion for Reconsideration because it was an "inappropriate procedural vehicle" for Acute's requested relief: the APA itself, not the Sale Order, specified the parties' closing obligations; the Sale Order simply authorized Debtors to sell their assets to Acute. *Id.* at 5:10–6:4. The Bankruptcy Court further noted that the APA "is a binding contract and both sides have to perform." *Id.* at 11:18. If Acute wanted the Bankruptcy Court to determine the parties' obligations under the APA, the proper procedural vehicle would be a motion to enforce, not to vacate, rehear, or amend the Sale Order:

> [I]t sounds like [Acute] agreed to certain terms and provisions regarding the license that maybe they weren't prepared to fulfill timely, but this goes both ways, this is an utter mess on both sides, and you all need to decide, is there a deal to be had or is there not, and if there is, does somebody want me to enforce it or not. But the motion to reconsider is not the right vehicle. There is no basis to reconsider the entry of the [S]ale [O]rder, it was appropriate and there's no grounds under Rule 59 or 60 to vacate or rehear that.

*Id.* at 12:19–13:2.   On September 27, 2024, the Bankruptcy Court issued a written Order memorializing its oral ruling denying the Motion for Reconsideration ("Order Denying Reconsideration").  *See In re ECI* (Bankr. S.D. Fla. Sept. 27, 2024), ECF No. 229.  On October 11, 2024, Appellant filed a Notice of Appeal of both the Sale Order and the Order Denying Reconsideration ("First Notice of Appeal").  *See* [ECF No. 1]; *In re ECI* (Bankr. S.D. Fla. Oct. 11, 2024), ECF No. 257.  ECI filed the First MTD on October 18, 2024, [ECF No. 5]; Acute filed a Response on November 4, 2024 ("First MTD Response"), [ECF No. 10]; and ECI filed a Reply on November 11, 2024 ("First MTD Reply"), [ECF No. 18].

### III.   *Second Appeal*

Acute separately appeals from the Bankruptcy Court's Order Confirming Debtors' Amended Joint Plan of Liquidation ("Confirmation Order").  *In re ECI* (Bankr. S.D. Fla. Oct. 24, 2024), ECF No. 296.

In parallel to the sale process that is the subject of the First Appeal, Debtors sought the Bankruptcy Court's approval of a small business plan of liquidation pursuant to 11 U.S.C. Chapter 11, Subchapter V, filing an initial plan of liquidation on August 1, 2025, *id.* (Bankr. S.D. Fla. Aug. 1, 2024), ECF No. 163, and an amended plan of liquidation ("Plan") on August 21, 2024, *id.* (Bankr. S.D. Fla. August 21, 2024), ECF No. 181.  The Bankruptcy Court scheduled a hearing on the Plan for October 22, 2024, and set a deadline of October 8, 2024, to file objections to confirmation and file ballots accepting or rejecting the Plan.  *Id.* (Bankr. S.D. Fla. August 15, 2024), ECF No. 170.

As scheduled, the Bankruptcy Court held a hearing on the Plan on October 22, 2024 ("Confirmation Hearing").  *See* Confirmation Hearing Transcript, [ECF No. 31].  Acute did not attend the hearing or otherwise object to the confirmation of the Plan.  *See* Confirmation Order at 3 (noting attendees at Confirmation Hearing and indicating that there were no objections to

confirmation); Confirmation Hearing Transcript, [ECF No. 31] at 4:1–3 (noting that no representative for Acute was present at the Confirmation Hearing). The Bankruptcy Court then entered the Confirmation Order on October 24, 2024, confirming the Plan pursuant to 11 U.S.C. § 1191(a). *See* Confirmation Order at 9.

On November 7, 2024, Acute filed a Notice of Appeal from the Confirmation Order ("Second Notice of Appeal"). *See Acute, Inc. v. ECI Pharmaceuticals, LLC*, Case No. 24-cv-62112 (S.D. Fla. Nov. 8, 2024), ECF No. 1; *In re ECI* (Bankr. S.D. Fla. Nov. 7, 2024), ECF No. 301. The Second Appeal was transferred to the undersigned and the Court consolidated it with the above-styled case. *See Acute, Inc. v. ECI Pharmaceuticals, LLC*, Case No. 24-cv-62112 (S.D. Fla. Nov. 15, 2024), ECF No. 8; *Id.* (S.D. Fla. Nov. 18, 2024), ECF No. 9. ECI filed the Second MTD on December 3, 2024, [ECF No. 25]; Acute filed a Response on December 20, 2024 ("Second MTD Response"), [ECF No. 10]; and ECI filed a Reply on December 26, 2024 ("Second MTD Reply"), [ECF No. 39].

## **LEGAL STANDARD**

District courts may review bankruptcy decisions on appeal. *Miner v. Bay Bank & Trust Co.*, 185 B.R. 362, 365 (N.D. Fla. 1995), *aff'd*, 83 F.3d 436 (11th Cir. 1996). A bankruptcy court's factual findings are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *See Martin v. Martin*, 618 B.R. 326, 329 (S.D. Fla. 2020) (quoting *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996) (citation and internal quotations omitted)). A bankruptcy court's factual findings may be clearly erroneous when "the reviewing court upon examining the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kane v. Steward Tilghman Fox & Bianchi, P.A.*, 485 B.R. 460, 468 (S.D. Fla. 2013) (cleaned up). And when reviewing a bankruptcy court's legal conclusions *de novo*, the Court is required to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and

conclusions." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).  To that end, a district court may affirm a bankruptcy court's order "on any ground supported by the record." *Martin*, 618 B.R. at 330 (quoting *In re Gosman*, 382 B.R. 826, 839 n.3 (S.D. Fla. 2007) (cleaned up)).

## ANALYSIS

### I.    *First Appeal and Motion for Leave to Amend Sale Order*

#### A.  *Appeal of Sale Order*

Acute's appeal of the Sale Order is not timely.  A notice of appeal of a final bankruptcy order must be filed within fourteen days of the order.  *See* FED. R. BANKR. P. 8002(a)(1).  Under Eleventh Circuit precedent, this deadline is mandatory and jurisdictional.  *See In re Williams*, 216 F.3d 1295, 1298 (11th Cir. 2000); *see also Suber v. Lowes Home Centers, Inc.*, 609 F. App'x 615, 616 (11th Cir. 2015).  However, Bankruptcy Rule 8002(b) tolls the time to appeal an order if a party either files a motion to alter or amend the judgment under Bankruptcy Rule 9023 or files a motion for relief from judgment under Bankruptcy Rule 9024 within fourteen days of the entry of the judgment or order.  *See* FED. R. BANKR. P. 8002(b)(1)(B), (D).

There is no dispute that the First Appeal would be timely if the Motion for Reconsideration tolled the time to file a Notice of Appeal.  Acute filed the Motion for Reconsideration within fourteen days of the Sale Order and filed the Notice of Appeal within fourteen days of the Bankruptcy Court's Order Denying Reconsideration.  *See* Sale Order (entered on August 30, 2024); Mot. for Recons. (filed on September 13, 2024); Order Denying Recons. (entered on September 27, 2024); Notice of Appeal (filed on October 11, 2024).  Instead, ECI contends that Bankruptcy Rule 8002(b) did not toll the time for Acute to appeal the Sale Order because the Motion for Reconsideration was not, in fact, a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024 even though it was labelled as such.  *See generally* First MTD.  And because the Notice

of Appeal was filed on October 11, 2024, forty-two days after the Court entered the Sale Order, Acute's appeal of the Sale Order is not timely. *See id.*

Bankruptcy Rule 9023 applies civil Rule 59 to bankruptcy proceedings, permitting a motion to alter or amend a judgment. *See* FED. R. BANKR. P. 9023; FED. R. CIV. P. 59(e). Bankruptcy Rule 9024 applies civil Rule 60 to bankruptcy proceedings, permitting a motion for relief from an order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. BANKR. P. 9024; FED. R. CIV. P. 60(b).

The Court agrees that the Motion for Reconsideration was not properly brought under either Bankruptcy Rule 9023 or 9024, and, therefore, did not toll the time to appeal the Sale Order. Although the Motion for Reconsideration is styled as a motion under Bankruptcy Rules 9023 and 9024, "the style of a motion is not controlling." *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988) (citing *Lucas v. Florida Power & Light Co.*, 729 F.2d 1300, 1302 (11th Cir. 1984)). What matters is whether the motion really is what it says it is, *i.e.*, whether the relief requested is of a type that can be granted under the rule cited. *See Lucas*, 729 F.2d at 1302 (holding that a court must "construe [a motion], however styled, to be the type proper for the relief requested" (quoting *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983))). A motion improperly

styled as a motion for reconsideration under either Rule 59 or Rule 60 will not toll the time to appeal. *Id.* at 1301–02 (finding that a motion improperly styled as a motion to amend the judgment under Rule 59 did not have tolling effect under Federal Rule of Appellate Procedure 4(a)(4) because it was really a motion requesting costs under Rule 54); *cf. Finch*, 845 F.2d at 258 (finding that a motion was best characterized as a Rule 59(e) motion even though it was not labelled as such and therefore tolled the time for appeal).

Here, the relief requested in the Motion for Reconsideration is that the Bankruptcy Court vacate the Sale Order and amend it to include specific references to the conditions precedent that would be required to trigger Acute's closing obligations under the APA and to include a specific closing date. *See* First MTD Resp. ¶ 10. The problem is that Acute is shooting at the wrong target. The relief requested is aimed not at the Sale Order itself, but at the parties' contractual obligations under the APA. The appropriate vehicle for such relief is a motion to enforce, not a motion to reconsider the Sale Order.

At bottom, Acute wants the Bankruptcy Court to determine the parties' closing obligations and to fix a closing date through the Sale Order. But Acute cannot recast what is fundamentally a motion to enforce as a motion to reconsider by requesting this relief in the form of an amendment to the Sale Order. The parties' closing obligations are dictated by the APA, not the Sale Order. The Bankruptcy Court entered the Sale Order pursuant to 11 U.S.C. § 363(b)(1), which permits a debtor (or trustee) to sell property of the estate with court approval, after notice and a hearing. In a motion for sale under section 363, the court may approve the debtor's sale of estate property "where the debtor has used reasonable business judgment and articulated a business justification for such use." *In re 160 Royal Palm, LLC*, 600 B.R. 119, 126 (S.D. Fla. 2019) (quoting *In re SW Boston Hotel Venture, LLC*, No. 10-14535-JNF, 2010 WL 3396863, at *3 (D. Mass. Bankr. Aug. 27, 2010)), *aff'd*, 785 F. App'x 829 (11th Cir. 2019). Thus, a sale order may approve the sale

motion if the underlying sale agreement is within the debtor's reasonable business judgment, but the parties' substantive obligations, including closing terms, are set by the parties' underlying sale agreement—in this case, the APA. *See* Sale Motion at 18–19 (listing closing conditions under Article 8 of the APA).

Consistent with this understanding of section 363, the Sale Order does not require a closing. Instead, it explicitly recognizes that the parties' closing obligations are controlled by the APA, providing that "[t]he Debtors and [Acute] are free to close under the APA at any time, subject to the express terms of the APA." Sale Order ¶ 5. The Sale Order also provides that the Bankruptcy Court retains exclusive jurisdiction to enforce, implement, and interpret both the Sale Order and the APA and to resolve any disputes arising therefrom. *See id.* ¶ 4.

The Motion for Reconsideration requests that the Bankruptcy Court amend the Sale Order to determine the parties' contractual obligations under the APA—but amending the Sale Order is the wrong way to go about doing this. If Acute is right about the parties' closing obligations under the APA, amending the Sale Order would have no effect because the parties' closing obligations are already set by the APA. If Acute thought Debtors breached the APA, it could simply ask the Bankruptcy Court to enforce the APA pursuant to the Sale Order. *See id.*

In other words, the Motion for Reconsideration is a square peg in a round hole. It seeks relief that should have been sought through a motion to enforce. Tellingly, the Motion for Reconsideration does not articulate a basis for the requested relief under Rule 59 or 60. Indeed, it only recites the relevant standard under Rule 60 and does not explain how either Rule 59 or Rule 60 provides a basis to vacate the Sale Order to determine the parties' contractual obligations. It provides a long narrative of the parties' dispute, but it does not attempt to explain how these alleged facts justify amending the Sale Order. Nor does it state how the Bankruptcy Court should amend the Sale Order—only that the Bankruptcy Court should determine when and under what

circumstances closing must occur under the APA. Acute's difficulty in explaining why the requested relief is appropriate under either Rule 59 or Rule 60 further underscores that a motion for reconsideration was—as the Bankruptcy Court previously recognized—an "inappropriate procedural vehicle." [ECF No. 13] at 5:19–22. The Bankruptcy Court retains jurisdiction to enforce the APA. *See* Sale Order ¶ 4. Acute's requested relief—to determine the parties' closing obligations—would be most properly brought as a motion to enforce, not as a motion to vacate or amend the Sale Order on reconsideration.

Acute's problem is with the parties' contractual obligations under the APA, not with the Sale Order itself—as Acute's own briefing recognizes. *See* First MTD Resp. at 1 ("This appeal concerns complex and difficult contractual agreements between the parties."); Mot. For Recons. ¶ 26 (arguing that SBFP's closing demand was "in violation of the contractual obligations of the parties and in violation of the [Sale Order]"). Accordingly, the Court finds that the Motion for Reconsideration is not a proper motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024 and consequently did not toll the time to appeal the Sale Order. *See Lucas*, 729 F.2d at 1301–02. Therefore, Acute's appeal of the Sale Order is untimely and must be dismissed for lack of jurisdiction. *See In re Williams*, 216 F.3d at 1298.

### B. *Appeal of Order Denying Reconsideration*

Although the First Appeal is untimely with respect to the Sale Order, it is timely with respect to the Order Denying Reconsideration because the Notice of Appeal was filed fourteen days after the Bankruptcy Court entered the Order Denying Reconsideration. *See* FED. R. BANKR. P. 8002(a)(1). However, the Court finds that it does not have appellate jurisdiction because the Order Denying Reconsideration is not a final order and there are no grounds to grant leave for interlocutory appeal.

Federal district courts have appellate jurisdiction in bankruptcy cases "from final judgments, orders, and decrees," 28 U.S.C. § 158(a)(1), and "with leave of the court, from other interlocutory orders and decrees," 28 U.S.C. § 158(a)(3). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). The relevant inquiry, therefore, is whether the bankruptcy court's order "terminates a procedural unit separate from the remaining case" and "conclusively resolve[s] the movant's entitlement to the requested relief." *Id.* at 46.

Ordinarily, "[a]n order from a bankruptcy court approving the sale of assets represents a final appealable judicial order," *In re Daewoo Motor Co. Ltd., Dealership Litig.*, No. MDL-1510, 2005 WL 8005218, at *6 (M.D. Fla. Jan. 6, 2005) (citations omitted), and a properly filed motion for reconsideration under Bankruptcy Rule 9023 or 9024 will toll the time to appeal, *see* FED. R. BANKR. P. 8002(b). However, as the Court has explained, the Motion for Reconsideration was not a motion under Bankruptcy Rule 9023 or 9024, so the question is whether the Order Denying Reconsideration is itself an appealable final order.

It is not. The Motion for Reconsideration sought a determination of the parties' contractual obligations under the APA. The Bankruptcy Court's Order Denying Reconsideration did not make any determination on the merits of that question, much less "terminate[ ] a procedural unit separate from the remaining case" or "conclusively resolve[ ] [Acute]'s entitlement to the requested relief." *Ritzen*, 589 U.S. at 46. Rather, the Bankruptcy Court denied Acute's Motion for Reconsideration because it was an "inappropriate procedural vehicle" for seeking a determination of the parties' contractual obligations under the APA. Sale Hearing Transcript, [ECF No. 13] at 5:22-6:4. Acute remains free to seek its preferred interpretation of the APA through a motion to enforce. Accordingly, the Order Denying Reconsideration is not appealable as a final order.

The Court therefore concludes that the Order Denying Reconsideration was interlocutory. The Federal Rules of Bankruptcy Procedure require that an appeal of a bankruptcy court's interlocutory order must be accompanied by a motion for leave to appeal. FED. R. BANKR. P. 8004(a)(2).[2]  If an appellant fails to file a motion for leave to appeal, the district court may either "(1) treat the notice of appeal as a motion for leave to appeal and grant or deny it" or "(2) order the appellant to file a motion for leave to appeal within 14 days after the order has been entered." FED. R. BANKR. P. 8004(d).

Because Acute has not filed a motion for leave to appeal, the Court treats the First Notice of Appeal as a motion for leave to appeal an interlocutory order and denies it.  A motion for leave to appeal under 28 U.S.C. § 153(a)(3) is governed by the standard for permitting interlocutory appeals under 28 U.S.C. § 1292(b). *See In re Celotex Corp.*, 187 B.R. 746, 749 (M.D. Fla. 1995) (citing *In re Charter Co.*, 778 F.2d 617, 620 (11th Cir. 1985)).  Under this standard, a district court may permit an interlocutory appeal of a bankruptcy order if the moving party shows that "(1) the order presents a controlling question of law; (2) over which there is a substantial ground for difference of opinion among courts; and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation." *Laurent v. Herkert*, 196 F. App'x 771, 772 (11th Cir. 2006) (citing 28 U.S.C. § 1292(b)); *see In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 919 (S.D. Fla. 2005).  Even where these factors are present, the appellate court "has discretion to turn down" the appeal because permitting liberal use of interlocutory appeals "is bad policy." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

---

[2]  The motion for leave to appeal filed alongside the notice of appeal must include "(A) the facts needed to understand the question presented; (B) the question itself; (C) the relief sought; (D) the reasons why leave to appeal should be granted; and (E) a copy of the interlocutory order or decree and any related opinion or memorandum." FED. R. BANKR. P. 8004(b)(1).

None of the grounds for permitting interlocutory appeal are present here.  First, the Order Denying Reconsideration does not present a "controlling issue of law."  "To satisfy this portion of the standard, the movant must demonstrate that there is a question of *law*, and it is *controlling*." *In re Pac. Forest Prods. Corp.*, 335 B.R. at 919 (emphasis in original) (citing *Ahrenholz v. Bd. of Tsr. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000)).  The "issue of law" must be one that "deals with a question of 'pure' law, or matters that can be decided 'quickly and cleanly without having to study the record.'"  *In re Pac. Forest Prods. Corp.*, 335 B.R. at 919 (quoting *McFarlin*, 381 F.3d at 1258, 1260–62).  The issue of law is "controlling" if "reversal of the [trial] court's order 'would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.'"  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 658 B.R. 19, 25 (S.D.N.Y. 2024).  Here, the Bankruptcy Court did not deny the Motion for Reconsideration on any controlling issue of law, only a determination that the motion was procedurally improper.  Litigating that determination on appeal would in no way contribute to the outcome of the Bankruptcy Case.

Second, the Court only needs to analyze whether there is a substantial ground for difference of opinion among courts when the underlying issue is on a controlling issue of law.  *See Samsung Semiconductor, Inc. v. AASI Liquidating Tr. ex rel. Welt*, No. 12-23707, 2013 WL 704775, at *5 (S.D. Fla. Feb. 26, 2013) ("If the court finds that a matter raises a controlling question of law . . . [it] must determine whether a substantial ground for difference of opinion exists as to that question.").  Because the Order Denying Reconsideration does not present a controlling issue of law, there is no need for the Court to consider the second prong.

Third, there is no indication that immediate resolution of the issue would materially advance the ultimate termination of the litigation.  *See McFarlin*, 381 F.3d at 1259 (explaining that

resolution of an issue materially advances the ultimate termination of the litigation when it "would serve to avoid a trial or otherwise substantially shorten the litigation.").

Because the Order Denying Reconsideration was not a final order and there are no grounds to grant leave for interlocutory appeal, the Court does not have jurisdiction over Acute's appeal of the Order Denying Reconsideration. *See* 28 U.S.C. § 158.

## II.    *Second Appeal*

The Second Appeal concerns the Bankruptcy Court's Confirmation Order. ECI argues that Acute does not have standing to appeal the Confirmation Order and waived its arguments on appeal because it did not attend the Confirmation Hearing and did not object to the Confirmation Order when it had the opportunity to do so before the Bankruptcy Court. *See generally* Second MTD.

Acute seeks to Appeal the Confirmation Order because it contains a third-party release and injunction that it argues is unlawful following the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). *See* Second MTD Resp. ¶¶ 11–21. In *Purdue Pharma*, the Supreme Court held that the Bankruptcy Code does not authorize "a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Purdue Pharma*, 603 U.S. at 227. Although the third-party release in the Confirmation Order—unlike the release at issue in *Purdue Pharma*—allows non-debtors to opt-out, Acute argues that this opt-out release still runs afoul of *Purdue Pharma*'s holding because it enters the release by default in the absence of objection and is therefore nonconsensual.

Acute brings these arguments for the first time on appeal even though it had notice of the Confirmation Hearing and an opportunity to object before the Bankruptcy Court. ECI contends that Acute's failure to attend or object deprives it of prudential standing to appeal the Confirmation Order under the "person aggrieved" doctrine, and also constitutes a forfeiture of Acute's right to

appeal the Confirmation Order. Although it is unclear whether failure to attend and object deprives a party of person aggrieved status, the Court agrees that Acute forfeited its arguments on appeal because it failed to attend the Confirmation Hearing or object to the Confirmation Order—despite having ample opportunity to do so.

In order to appeal a bankruptcy court order, an appellant must demonstrate not only that it has constitutional standing, but also that it is a "person aggrieved" by the bankruptcy order, a prudential requirement derived from the Bankruptcy Code of 1898.[3] *See In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1324 (11th Cir. 2014). Although the person aggrieved requirement is often described as a standing requirement, this is something of a misnomer because the person aggrieved doctrine, unlike constitutional standing, "does not speak to a court's subject-matter jurisdiction." *In re Ernie Haire Ford, Inc.*, 764 F.3d at 1325 n.3. Rather, the person aggrieved doctrine "tells us which parties may appeal from a bankruptcy court order." *Id.* Because bankruptcy proceedings "often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt," bankruptcy law developed the "person aggrieved" doctrine as a "special rule[ ]" that "limits the right to appeal a bankruptcy court order to 'those parties having a direct and substantial interest in the question being appealed,'" namely, those who are "'directly, adversely, and pecuniarily affect[ed]' by a bankruptcy court's order." *Id.* at 1325 (quoting *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d at 1335, 1337–38. "An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their burdens, or impairs their rights." *Id.* (quoting *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d at 1338). The person aggrieved doctrine therefore "restricts standing more

---

[3] Although the Bankruptcy Reform Act of 1978 (which provides the modern version of the Bankruptcy Code) "does not define who has standing to appeal" a bankruptcy order, the Eleventh Circuit like "every circuit court to consider the issue," has adopted the "person aggrieved" doctrine as "set forth in the prior law, the Bankruptcy Act of 1898." *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1334–35 & n.3 (11th Cir. 2002).

than Article III standing." *In re Bay Circle Props., LLC*, 955 F.3d 874, 879 (11th Cir. 2020) (quoting *In re Heatherwood Holdings, LLC*, 746 F.3d 1206, 1216 (11th Cir. 2014)).

The Courts of Appeals are split as to whether attendance and objection in the underlying bankruptcy proceeding are prerequisites to fulfilling the person aggrieved standard. *Compare In re Weston*, 18 F.3d 860, 864 (10th Cir. 1994) (holding that attendance and objection at a bankruptcy court proceeding are prerequisites to being a person aggrieved), *and Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992) (same), *with Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1193 (9th Cir. 2018) (finding that failure to attend and object does not implicate whether a party is "aggrieved," but may nevertheless result in waiver or forfeiture of the right to make certain arguments on appeal), *and In re Urb. Broad. Corp.*, 401 F.3d 236, 244 (4th Cir. 2005) ("[D]efining standing by whether an appellant has objected to an order or attended a hearing conflates basic notions of standing with notions of waiver and forfeiture.").

The Eleventh Circuit has considered but declined to answer whether objection and attendance are prerequisites to meeting the person aggrieved standard. *See In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1197 (11th Cir. 2015) ("[W]e need not decide whether attendance and objection in the bankruptcy proceedings is a prerequisite for prudential standing in bankruptcy appeals." (citation omitted)). In the face of a circuit split and with no clear guidance from the Eleventh Circuit, the Court likewise declines to answer whether attendance and objection in a bankruptcy proceeding is a prerequisite to meeting the person aggrieved standard because Acute's failure to attend or object dooms its appeal for an independent reason: forfeiture.[4] *Id.* (noting that

---

[4] The parties refer to Acute's failure to object in the Bankruptcy Court as an issue of waiver. However, the Eleventh Circuit has clarified that "[a]lthough jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right" whereas "waiver is the intentional relinquishment or abandonment of a known right." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (internal quotation marks omitted) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)). "Waiver" occurs "if a party affirmatively and intentionally relinquishes an issue," in which case, "courts must respect that decision." *Id.* "Forfeiture" is non-jurisdictional and occurs "automatically whenever a party fails to

an "appellate court can affirm on any ground supported by the record" (citing *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.,* 528 F.3d 839, 844 (11th Cir. 2008)).

      The Eleventh Circuit has "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)).  This principle is no less true in bankruptcy appeals.  *See In re Lett*, 632 F.3d 1216, 1226 (11th Cir. 2011) (noting that appellate courts generally should not "intrude upon the province of the bankruptcy courts below by reaching issues not brought before them, as '[b]ankruptcy cases are to be tried in bankruptcy court.'" (quoting *In re Air Conditioning, Inc. of Stuart*, 845 F.2d 293, 298 (11th Cir. 1988))).  Thus, a district court retains "discretion [whether] to resolve an issue not decided in the Bankruptcy Court if the record thoroughly presents the issue" but "if the record reflects an issue was presented in a cursory manner and never properly presented to the Bankruptcy Court, the issue is not preserved for appeal." *Id.* at 1229 (quoting *In re Monetary Group*, 91 B.R. 138, 148 (M.D. Fla. 1988)).

      Here, it is undisputed that Acute did not attend the Confirmation Hearing or object to the Confirmation Order.  *See* Confirmation Order at 3 (noting attendees at Confirmation Hearing and indicating that there were no objections to confirmation); Confirmation Hearing Transcript, [ECF No. 31] at 4:1–3 (noting that no representative for Acute was present at the Confirmation Hearing).

      Nevertheless, because an appellate court's power to hear a new argument for the first time on appeal is not jurisdictional, it "*may* choose to hear the argument under special circumstances." *Access Now*, 385 F.3d at 1332 (emphasis in original); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 989 (11th Cir. 1982) ("The decision whether to consider

---

timely assert their rights." *Id.* (internal quotation marks and quotation omitted).  Accordingly, whether Acute's arguments are preserved on appeal despite its failure to timely assert those arguments in the Bankruptcy Court is an issue of forfeiture, not waiver.

an argument first made on appeal . . . is 'left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976))). The Eleventh Circuit has recognized five "exceptional" circumstances where an appellate court may exercise its discretion to hear issues raised for the first time on appeal:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Access Now*, 385 F.3d at 1332 (quoting *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)).[5]

None of these exceptional circumstances are present here. Resolution is certainly not "beyond any doubt." *Id.* (quotation omitted). Indeed, in the wake of *Purdue Pharma*, federal courts around the country have split on whether its holding forbids the confirmation of a liquidation plan with an opt-out third-party release. *Compare, e.g.*, *In re Lavie Care Centers, LLC*, No. 24-55507-PMB, 2024 WL 4988600, at *17 (Bankr. N.D. Ga. Dec. 5, 2024) (finding that an opt-out third party release "provided a consensual third-party release" permissible under *Purdue Pharma*), *with In re Smallhold, Inc.*, 665 B.R. 704, 719–20 (Bankr. D. Del. 2024) (finding that after *Purdue*

---

[5] The Eleventh Circuit has also recognized an additional limited exception to the general appellate forfeiture rule in bankruptcy appeals where the appellant raises an otherwise unpreserved challenge to a "cram-down" plan of liquidation entered under 11 U.S.C. § 1129(b)(1) on the ground that it violates the absolute priority rule found in 11 U.S.C. § 1129(b)(2)(B). *See In re Lett*, 632 F.3d 1216, 1229–30 (11th Cir. 2011). This special exception is not applicable here because *In re Lett* was narrowly confined to the circumstances of that case. 632 F.3d at 1222 n.12 ("[O]ur narrow holding today only allows for the review of otherwise unpreserved challenges to a cram down plan on the ground that it violates the absolute priority rule found in § 1129(b)(2)(B)[.]").

*Pharma*, "it is no longer appropriate to require creditors to object or else be subject to (or be deemed to "consent" to) . . . a third-party release"). Nor is resolution of Acute's substantive arguments a "pure question of law," *Access Now*, 385 F.3d at 1332 (quotation omitted), as even those courts that have found an opt-out third party release to be consensual have limited their findings to the particular facts and circumstances of the plan being confirmed. *See In re Lavie Care Centers, LLC*, 2024 WL 4988600, at *17 ("[T]his Court declines the opportunity to create a universal test or set of standards for approving all opt-out third-party release plans, as the analysis in each case must be fact and case specific."). Nor is this a case where "the interest of substantial justice is at stake," *Access Now*, 385 F.3d at 1332 (quotation omitted), a circumstance that is "generally equated with the vindication of fundamental constitutional rights." *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1207 (11th Cir. 1989). And although the application of *Purdue Pharma* to opt-out third-party releases may be an important issue of general impact, it would be a disservice to the issue to consider it on a record so poorly presented. *See Access Now*, 385 F.3d at 1335 (declining to hear issue raised for the first time on appeal even though it was one of "substantial public importance" because evaluating it "without the benefit of any record or [lower] court ruling, [would invite] disaster for an appellate court.").

Acute also had ample opportunity to raise whatever objections it might have had before the Bankruptcy Court. Acute concedes that it received electronic filings in the Bankruptcy Case via the Bankruptcy Court's CM/ECF system, *see* Second MTD Resp. ¶ 9, and Acute had no trouble participating in the Bankruptcy Case below, as evidenced by the First Appeal. The record also indicates that Acute was aware of the Confirmation Hearing and specifically decided not to attend or object; indeed, Debtors' counsel spoke with Acute prior to the Confirmation Hearing and Acute informed Debtors' counsel that Acute would not attend the Confirmation Hearing. *See* Confirmation Hearing Transcript at 4:3–8 ("[The Bankruptcy Court:] I do not see [counsel for

Acute] or anyone from Acute here.  You're welcome to give me an update on that if it's at all relevant to confirmation.  If not, let's proceed.  [Counsel for Debtors]: Very briefly.  I did speak to [counsel for Acute] this morning, he said he was not going to attend.").

Acute nevertheless protests that the Court should get to the merits of its *Purdue Pharma* argument because Acute had "no standing to vote on confirmation of the Plan" and therefore had no meaningful opportunity to oppose the third-party release, rendering it nonconsensual.  Second MTD Response ¶ 14.  This argument fails for at least three reasons.

First, Acute confuses its right to *vote* on the Plan with its right to *object* to the Plan.  Acute is correct that it had no right to vote on the Plan because it is not the holder of an "allowed" claim under section 502 of the Bankruptcy Code.  *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan.").  But this does not mean that Acute could not register any objections to the Plan before the Bankruptcy Court.  The Bankruptcy Code provides that any "party in interest . . . may raise and may appear and be heard on any issue" in a Chapter 11 case.  11 U.S.C. § 1109(b).  A "party in interest" refers to any entity that is "potentially concerned with or affected by a proceeding," including those who are "directly and adversely affected by the reorganization proceedings."  *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 278, 281 (2024).  The term "party in interest" is a "capacious" one, reflecting a policy of "[b]road participation" aimed at "promot[ing] a fair and equitable reorganization process."  *Id.* at 277, 280; *see also id.* at 278 ("Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply broadly." (quotation and internal quotation marks omitted)).

If Acute means to argue that it was not a party in interest under § 1109(b) or that it did not have Article III standing to object to the Confirmation Order, that contention would be odd given that Acute maintains it *was* directly affected by the third-party release.  *See* Second MTD Resp.

¶ 22.  This is ostensibly the whole point of the Second Appeal.  And, as the Court has already noted, Acute experienced no issue with participating in the Bankruptcy Case prior to the Confirmation Order.  Indeed, the Bankruptcy Court expected that Acute might attend the Confirmation Hearing.  *See* Confirmation Hearing Transcript at 4:3–4 (noting the absence of Acute's counsel at the Confirmation Hearing).  But even had Acute objected and the Bankruptcy Court found Acute was not able to object, Acute at least would have preserved *that* issue as well as its substantive objections to the Plan.  Acute's inability to vote on the Plan is therefore irrelevant to whether it could have objected to the Plan.

Second, Acute conflates two different questions: whether it waived its arguments on appeal and whether it consented to the third-party release.  The first question is procedural.  The second goes to the merits of Acute's *Purdue Pharma* argument.  Again, had Acute objected to the Confirmation Order, it would have preserved its arguments on appeal regardless of whether the Bankruptcy Court agreed with Acute or entered the Confirmation Order over Acute's objection.

Third, if Acute's argument is that it lacked standing to object (and not merely that it could not vote), that argument is self-defeating.  If Acute did not have standing to object to the Plan in the first place under the capacious standard set by § 1109(b), it is not clear how Acute could meet the requirements of Article III standing or the even more rigorous "person aggrieved" standard on appeal.  *See, e.g.*, *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 n.23 (3d Cir. 2011) (explaining that the person aggrieved standard is "more stringent" than "party-in-interest" standing in the underlying bankruptcy proceeding).  Consequently, Acute's argument that the Court should consider the merits of the Second Appeal because it could not object to the Plan is wholly unmeritorious.

Lastly, the Court notes that Acute seems to view the Second Appeal as an opportunity to raise all its grievances throughout the Bankruptcy Case, none of which were presented to the Bankruptcy Court in opposition to the Confirmation Order:

> To properly adjudicate the issues involving the instant appeal, the Court must be fully informed of the underlying process and events leading to this point.  Appellant Acute's brief to be filed in this appeal, will expose, along with the proofs, the full details about Appellees' rigged and failed auction process, how the price was subsequently shifted from the estate assets to the non-debtor assets, and how the process by bifurcating the sale of the assets lead [sic] to shifting of the value of the assets to the non-debtors assets. . . . These events need to be fully briefed, and when done so, it will become self-evident that the Appellees and non-debtors, including those that benefit from the third party nondebtor releases contained in the Plan, have not acted equitably.  Allowing the third party releases to stand under these circumstances would be a travesty and extremely prejudicial to the property and legal rights of Appellant Acute.  The Court should look at the full course of dealings, the innocence or intent of the parties, and whether they have acted in bad faith.  Only after that analysis can the Court determine if the third party non-debtor release is appropriate.

Second MTD Resp. ¶ 22.  Regardless of whether Acute is correct that all of this context is necessary to decide the Second Appeal—a proposition that seems doubtful at best—this argument makes clear that hearing the merits of the Second Appeal will force the Court to wade into a complicated morass of factual issues not properly presented in the record and not briefed before the Bankruptcy Court.  This is exactly why appellate courts generally do not review questions presented for the first time on appeal absent exceptional circumstances.  *See Access Now*, 385 F.3d at 1331 ("If we were to regularly address questions—particularly fact-bound issues—that [a district court] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.").

Acute forfeited its arguments by failing to raise them before the Bankruptcy Court and this case does not presents circumstances "extraordinary enough for [the Court] to exercise [its] discretion and excuse the forfeiture."  *See Campbell*, 26 F.4th at 875.  Accordingly, the Court must

dismiss the Second Appeal.  *See Access Now*, 385 F.3d at 1335 (dismissing appeal where the appellant forfeited all substantive arguments) (citations omitted).

<u>**CONCLUSION**</u>

Accordingly, for the reasons stated herein, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.    Appellee's Motion to Dismiss First Appeal, [ECF No. 5], and Motion to Dismiss Second Appeal, [ECF No. 25], are **GRANTED**.  Appellant's First Appeal, [ECF No. 1], and Second Appeal, *Acute, Inc. v. ECI Pharmaceuticals, LLC*, Case No. 24-cv-62112 (S.D. Fla. Nov. 8, 2024), ECF No. 1, are **DISMISSED**.

2.    The Motion for Leave to Amend Sale Order, [ECF No. 6], is **DENIED as moot** without prejudice to seek leave to amend the Sale Order in the Bankruptcy Case.

3.    The Court retains jurisdiction over Appellee's first Motion for Sanctions, [ECF No. 25], and Appellee's second Motion for Sanctions, [ECF No. 33].  Per the Court's prior Orders, *see* [ECF Nos. 24, 37], Appellant shall file a single combined response to Appellee's first Motion for Sanctions, [ECF No. 25], and Appellee's second Motion for Sanctions, [ECF No. 33], on or before **June 25, 2025**.  Appellant may file a single combined reply on or before **July 2, 2025**.

4.    The Clerk is directed to **CLOSE** this case.  All deadlines are hereby **TERMINATED** and any remaining motions other than Appellee's first Motions for Sanctions, [ECF No. 25], and Appellee's second Motion for Sanctions, [ECF No. 33], are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of June, 2025.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**